UNITED STATES BANKRUPTCY COURT  HEARING DATE: October 29, 2020
SOUTHERN DISTRICT OF NEW YORK  HEARING TIME: 9:00 a.m.
------------------------------------------------------- x OBJECTION DEADLINE: October 22, 2020
              :
In re:           : Case No. 17-12378 (CGM)
              :
CAROLE RICHARDS, aka Carole Richards- : (Chapter 13)
Branch, dba Horizon Property Management, :
              :
       Debtor.  :
------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES TRUSTEE'S
MOTION FOR REVIEW OF FEES UNDER 11 U.S.C. §§ 329 AND 330(a)(4)(B)
AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2016(b) AND 2017(b)**

Dated: New York, New York    WILLIAM K. HARRINGTON
   October 14, 2020.     UNITED STATES TRUSTEE, REGION 2

             By: */s/ Alicia M. Leonhard*
               Alicia M. Leonhard
               Trial Attorney
               Leo O'Brien Federal Building
               11A Clinton Avenue, Room 620
               Albany, New York 12207
               Direct Telephone: 202.495.9929
               Albany Office Telephone: 518.434.4553
               Email: Alicia.M.Leonhard@usdoj.gov

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

II.  FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

   A.  The Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

   B.  The Appearance of M. Bradford Randolph, Esq. as Debtor's Counsel on
       February 20, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

   C.  Assets and Liabilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

   D.  Income and Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

      1.  Third Amended Schedule I and Fourth Amended Schedule J . . . . . . . . . . . .   6

      2.  The Debtor's First Amended Chapter 13 Means Test and Calculation of
          Commitment Period and Third Amended Chapter 13 Calculation of
          Disposable Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

   E.  The Debtor's Amended Chapter 13 Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

   F.  The Debtor's Attempts to Void the Secured Mortgage Claim Held by Wells
       Fargo Bank . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

   G.  The Chapter 13 Trustee's Motion to Dismiss and Revelations Regarding
       Mr. Randolph's Fee Arrangement with the Debtor Raised in U.S. Bank's
       Joinder in the Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

      1.  The Chapter 13 Trustee's Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . .   10

      2.  Revelations Regarding Mr. Randolph's Fee Arrangement with the Debtor .   11

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

   A.  Mr. Randolph Violated his Duty of Disclosure of Compensation under
       11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b), which
       Warrants Denial of all Compensation, Disgorgement of Fees Received to
       Date, and Cancellation of Any Employment Agreement with the Debtor. . . . .   12

   B.  Demanding Attorney Compensation up to $500,000.00 for Chapter 13-
       Related Services Is Excessive and Unconscionable and Warrants
       Cancellation of Any Employment Agreement and Denial and Disgorgement
       of Fees under 11 U.S.C. § 329(b) and Federal Rule of Bankruptcy Procedure
       2017(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

   C.  The Court Should Cancel the Notes and Security Agreements under 11
       U.S.C. § 329(b) and Direct Mr. Randolph to Release the UCC-1 Financing
       Statements Recorded Against the Properties. . . . . . . . . . . . . . . . . . . . . . . . . . .   20

   IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

# TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page**

*In re Argento*, 282 B.R. 108, (Bankr. D. Mass. 2002) . . . . . . . . . . . . . . . . . . . . . .    13

*Bethea v. Robert J. Adams & Assoc.*, 352 F.3d 1125 (7th Cir. 2003) . . . . . . . . . .    14

*In re Bolton*, 43 B.R. 598 (Bankr. E.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . .    17

*In re Buckner,* 350 B.R. 874 (Bankr. D. Idaho 2005) . . . . . . . . . . . . . . . . . . . . . .    15

*Butler, Fitzgerald & Potter v. Sequa Corp.,* 250 F.3d 171 (2d Cir. 2001) . . . . . . .    20

*In re Cervantes*, 617 B.R. 141 (Bankr. E.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . .    17

*In re Chatkhan*, 496 B.R. 687 (Bankr. E.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . .    14

*In re Chez*, 441 B.R. 724 (Bankr. D. Conn. 2010) . . . . . . . . . . . . . . . . . . . . . . . . .    14

*In re D'Arata*, 587 B.R. 819 (Bankr. S.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . .    17

*D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983) . . . . . . . . . . . . . . . . . . .    19 n3

*In re Dumain*, 492 B.R. 140 (Bankr. S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . .    19 n2

*In re LaFerriere*, 286 B.R. 520 (Bankr. D. Vt. 2002) . . . . . . . . . . . . . . . . . . . . . .    13

*In re Gage,* 394 B.R. 184 (Bankr. N.D. Ill. 2008) . . . . . . . . . . . . . . . . . . . . . . . . .    15

*In re Gorski,* 519 B.R. 67 (Bankr. S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . .    14, 15

*Graham v. Select Portfolio Servicing, Inc*., 156 F. Supp.3d 491 (S.D.N.Y. 2016).    19

*Matter of Grant*, 14 B.R. 567 (Bankr. S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . .    18

*In re GSC Group, Inc*., 502 B.R. 673 (Bankr. S.D.N.Y. 2016) . . . . . . . . . . . . . . .    15

*In re Hall,* 2014 WL 4796929 (Bankr. N.D.N.Y. September 26, 2014) . . . . . . . .    15

*In re Joseph*, 330 B.R. 87 (Bankr. D. Conn. 2005) . . . . . . . . . . . . . . . . . . . . . . . .    20

*Karsch v. LaBarge (In re Clark)*, 223 F.3d 859 (8th Cir. 2000) . . . . . . . . . . . . . .    17

*In re Manshul Constr. Corp*., 225 B.R. 41 (Bankr. S.D.N.Y. 1998) . . . . . . . . . . .    20

*In re Mouzakis*, 479 B.R. 247, 248 (Bankr. E.D.N.Y. 2012) . . . . . . . . . . . . . . . .    18

*In re Nakhuda*, 544 B.R. 886 (9th Cir. BAP 2016) . . . . . . . . . . . . . . . . . . . . . . . .    17

*In re Nunez*, 598 B.R. 696 (Bankr. E.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . .    12, 14

*In re Ortiz*, 496 B.R. 144 (Bankr. S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . .    13

*In re Ostas*, 158 B.R. 312 (N.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

*In re Rogers*, 519 B.R. 267 (Bankr. E.D. Ark. 2014) . . . . . . . . . . . . . . . . . . . . . .    20

*Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923) . . . . . . . . . . . . . . . . . . . . . . . .    19 n3

**Cases**                                                                                    **Page**

*In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Me. 1991) . . . . . . . . . . . . . . . . . .     13

*In re Sledge*, 352 B.R. 742 (Bankr. E.D.N.C. 2006) . . . . . . . . . . . . . . . . . . . . . .     15

*Stair v. Calhoun*, 722 F. Supp.2d 258 (E.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . .     20

*In re Whitcomb*, 479 B.R. 133 (Bankr. M.D. Fla. 2012) . . . . . . . . . . . . . . . . . . .     13, 15

**Statutes**

11 U.S.C. § 109(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     10

11 U.S.C. § 329 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1, 15

11 U.S.C. § 329(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1, 2, 3, 12,
                                                                                                                13, 15

11 U.S.C. § 329(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     2, 16, 17, 20

11 U.S.C. § 330(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     18

11 U.S.C. § 330(a)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1, 16, 18, 20

11 U.S.C. 503(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20

11 U.S.C. § 1326(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20


New York Judiciary Law § 475 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20

**Rules**

Fed. R. Bankr. P . 2016(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1, 2, 3, 12,
                                                                                                                13, 14, 15,
                                                                                                                16

Fed. R. Bankr. P . 2017(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1, 16, 17


Fed. R. Civ. P. 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     8


New York Rule of Professional Responsibility 1.8(i) . . . . . . . . . . . . . . . . . . . . . .     21 n.4

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
------------------------------------------------------- x

:
In re: :
: Case No. 17-12378 (CGM)
:
CAROLE RICHARDS, aka Carole Richards- :
Branch, dba Horizon Property Management, : (Chapter 13)
:
Debtor. :
------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES TRUSTEE'S MOTION FOR REVIEW OF FEES UNDER 11 U.S.C. §§ 329 AND 330(a)(4)(B) AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2016(b) AND 2017(b)**

William K. Harrington, United States Trustee for Region 2 (the "United States Trustee"), hereby files a Memorandum of Law in Support of the Motion for Review of Fees under 11 U.S.C. §§ 329 and 330(a)(4)(B) and Federal Rules of Bankruptcy Procedure 2016(b) and 2017(b) (the "Motion"). In support of the Motion, the United States Trustee respectfully represents and alleges as follows:

## I. INTRODUCTION

This facts of this case illustrate the paramount importance of requiring debtor's counsel to provide full disclosure of compensation agreements, payments, and property transfers for bankruptcy-related services, to prevent overreaching by debtor's counsel and protect the integrity of the bankruptcy process. Attorney M. Bradford Randolph, Esq. ("Mr. Randolph") filed a notice of appearance as Debtor's counsel in February 2018, approximately six months after she filed her *pro se* chapter 13 petition, but he failed to file the Disclosure of Compensation of Attorney for Debtor, required under 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b) (the "Rule 2016(b) Disclosure"), within fourteen days after he appeared in the case. In June 2020, one of the Debtor's creditors filed documents revealing that during the case,

Mr. Randolph induced the Debtor to execute promissory notes and security agreements to secure payment of up to $500,000.00 in fees for services rendered in the case, and recorded UCC-1 Financing Statements on property of the estate to perfect the security interests. Only then did Mr. Randolph file a woefully incomplete Rule 2016(b) Disclosure, in which he disclosed that he received fees totaling $117,745.00 during the case (without an Order of the Court) and the Debtor owed him $486,039.00, but omitted any mention of the notes, security agreements, liens he recorded on estate property. Based on these facts, Mr. Randolph flagrantly violated his duty of disclosure of compensation under 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b), which warrants denial of all compensation and disgorgement of any fees he received from the Debtor. In addition, demanding attorney compensation of up to $500,000.00 for chapter 13-related legal services is excessive and unconscionable and warrants denial of all compensation, disgorgement of fees received, and cancellation of any employment agreement with the Debtor under 11 U.S.C. § 329(b) and Federal Rule of Bankruptcy Procedure 2017(b). Finally, because Mr. Randolph improperly required the Debtor to execute Notes and Security Agreements to secure payment of his post-petition fees and filed liens on estate property, the Court should cancel the Notes and Security Agreements under 11 U.S.C. § 329(b) and direct Mr. Randolph to release the UCC-1 Financing Statements.

II.     **FACTS**

    A.     **The Debtor**

On August 28, 2017 (the "Petition Date"), the Debtor filed a *pro se* chapter 13 petition (the "Petition"). ECF Doc. No. 1. On the Petition, she listed her residence address as 3 East 128th Street, New York, NY 10035 (the "Residence"). On the Petition Date, she owned and operated Horizon Property Management, with business premises located at the Residence.

Petition, at 2, § 4.  ECF Doc. No. 1.  She also disclosed that her debts are primarily consumer

debts.  Petition, at 6, Line 16.

**B.      The Appearance of M. Bradford Randolph, Esq. as Debtor's Counsel on February 20, 2018**

On November 30, 2017, Pankaj Malik, Esq. filed an application to appear *pro hac vice* on

the Debtor's behalf in the case.  ECF Doc. No. 20.  On December 11, 2020, the Court entered an

order granting the application.  ECF Doc. No. 21.  On December 22, 2017, Mr. Malik filed an

application to employ Warshaw Burstein, LLP as Debtor's counsel, and a motion to convert the

Debtor's case to chapter 11 (the "Motion to Convert").  ECF Doc. No. 27 and 28.  On February

9, 2018, Mr. Malik filed a motion to withdraw as Debtor's counsel (the "Motion to Withdraw");

and on February 22, 2018, he withdrew the Motion to Convert.  ECF Doc. Nos. 30, and February

22, 2018 Docket Entry.  Before the Court considered the Motion to Withdraw, on February 20,

2018, M. Bradford Randolph, Esq. ("Mr. Randolph") filed a notice that he was substituting for

Mr. Malek as Debtor's counsel on the Debtor's consent (the "Notice of Substitution").  ECF

Doc. No. 32.  On March 19, 2018, the Court entered an Order granting the Motion to Withdraw.

ECF Doc. No. 28.  Mr. Randolph did not file a Rule 2016(b) Disclosure within fourteen days of

his appearance as required under 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure

2016(b).  He has continued to represent the Debtor in this case since the date of his appearance.

**C.      Assets and Liabilities**

During the time the Debtor was acting *pro se* in her case, she made numerous

amendments to her schedules and other documents she filed.  After appearing as Debtor's

counsel, Mr. Randolph filed further amendments, as follows:

On second amended Schedule A/B, filed April 11, 2018 ("Second Amended Schedule

A/B"), the Debtor scheduled three real properties, with a total value of $4,733,000.00, an

increase of more than $2.95 million from the values listed on First Amended Schedule A/B, filed on October 19, 2017. ECF Doc. Nos. 20 and 42. The Debtor scheduled the Residence, which she characterized as a duplex or multi-unit building, with a market value of $2.5 million (as opposed to the property tax valuation of $1.315 million on First Amended Schedule A/B). Second Amended Schedule A/B, at 1, Line 1, and Changes in Amended Schedule A/B, attached to Second Amended Schedule A/B ("Attachment 1"). She listed an investment property, located at 60 East 126th Street, New York, NY 10035, originally listed at the property tax valuation of $451,000.00, with a revised market value of $2.2 million (the "Investment Property," and together with the Residence, the "Properties"). *Id*., Line 1.2, and Attachment 1. She also scheduled an interest in a Time Share, which was originally given a value of $16,375.41, the balance owed on the debt secured by the Time Share, with a current market value of $33,000.00. *Id*. at 2, Line 1.3, and Attachment 1. The Debtor originally listed personal property with a total value of $60,985.00, including a 2017 Mercedes GLC 300, with a value of $43,000.00 (the "Mercedes"). *Id.*, Attachment 1. The total value of personal property listed on Amended Schedule A/B decreased to $24,119.00 mainly because the Debtor reduced the value of the Mercedes to $0.00 because it is leased. *Id*. at 2, Line 3, and 10, Line 62, and Attachment 1. Also included among the personal property listed on Schedule A/B is retainer of $25,000.00 paid to Mr. Malek in connection with employing him as bankruptcy counsel. *Id*. at 10, Line 53. The Debtor listed the value as $0.00, stating that she was "awaiting an accounting for use of funds prior to withdrawal as attorney of record." *Id*., Attachment 2.

On Fourth Amended Schedule D, filed on October 1, 2018, the Debtor scheduled secured claims of $1,867,898.22. Fourth Amended Schedule D, filed October 1, 2018. ECF Doc. No. 91. The Debtor listed a secured tax claim held by the IRS of $24,119.00. *Id.,* Line 2.1. The

Debtor listed a secured claim of $1,827,403.81, encumbering the Residence, held by U.S. National Bank ("U.S. Bank"), as Trustee for Credit Suisse First Boston Mortgage Securities Corp. ("Credit Suisse"), through servicing agent, Wells Fargo Bank, N.A. ("Wells Fargo"). *Id*., Line 2.2, Attachment 2, and ECF Doc. No. 91. The claim arises from a Judgment of Foreclosure and Sale entered in Wells Fargo's favor on May 27, 2015 in a foreclosure action against the Debtor and the Property (Index No 111801/08), filed on August 28, 2008 (the "Foreclosure Action"). Amended Statement of Financial Affairs, filed September 28, 2018, at 5, § 9. ECF. Doc. No. 83. The Debtor also scheduled a secured claim held by Westgate Timeshare in the amount of $16,375.41. *Id.* at 2, Line 2.3. In the Amended Statement of Financial Affairs, the Debtor disclosed pending litigation against HSBC Mortgage Corporation ("HSBC"), entitled *Richards v. HSBC*, Index No. 157151/2017, an action to cancel and discharge a lien on the Investment Property. Amended Statement of Financial Affairs, Attachment 3. On Fourth Amended Schedule D, the Debtor stated that she omitted HSBC's claim because it had not filed a proof of claim. Fourth Amended Schedule D, Changes to Amended Schedule D, ¶ 2.2.

On Fourth Amended Schedule E/F, filed October 1, 2018, the Debtor listed priority unsecured claims of $0.00 and general unsecured claims totaling $52,278.00. Fourth Amended Schedule E/F, at 4, Line 6j. ECF Doc. No. 91. The Debtor added TD Bank as a general unsecured claim of $0.00, stating in Attachments 1 and 2 that she borrowed $25,000.00 from TD Bank shortly before filing chapter 13 to pay a retainer to Mr. Malik. The Debtor states that "the item has been reduced to zero because it was not outstanding as of the date she filed for bankruptcy [and her husband] is making payments on the loan." *Id*., Attachment 2.

### D. Income and Expenses

#### 1. Third Amended Schedule I and Fourth Amended Schedule J

On Third Amended Schedule I, filed on April 11, 2018, the Debtor stated that she was not employed. Amended Schedule I, at 1, Line 1. She listed net income from renting real property or operating a business totaling $8,647.00 for herself and $568.00 for her non filing spouse. *Id*. at 1, Line 2; and 2, Line 8a. She also listed her non-filing spouse's SSI totaling $2,000.00. *Id.* at 2, Line 8f. In all, the Debtor scheduled combined monthly income of $14,613.00 for herself and her non-filing spouse. *Id*., Line 12.

On Fourth Amended Schedule J, filed on April 11, 2020, the Debtor listed monthly expenses of $3,874.55 and monthly net income of $10,738.45. The Debtor did not include any mortgage payments, taxes or other real property related expenses.[1] Fourth Amended Schedule J, Lines 4, 4a through 4d, 20b, 22c, and 23c.

#### 2. The Debtor's First Amended Chapter 13 Means Test and Calculation of Commitment Period and Third Amended Calculation of Disposable Income

On the Debtor's First Amended Chapter 13 Means Test and Calculation of Commitment Period, filed September 28, 2018, (the "Amended Means Test"), the Debtor listed total average monthly income of $14,613.00, comprising her net income from rental property of $8,647.00 and her non-filing spouse's income from operating a business, pension income, and SSI, totaling $5,966.00. Amended Means Test, at 1, Lines 5-6, and 2, Lines 9, 10, and 11. ECF Doc. No. 84. After subtracting the marital income adjustment, the Debtor's current monthly income totaled

---

[1]On Amended Schedule I, filed on October 6, 2017, the Debtor listed monthly income from operating her business, Horizon Property Management, of $18,250.00, but did not list any income for her non-filing spouse. Amended Schedule I, at 1, Line 1, and 2, Line 12. ECF Doc. No. 9. On Amended Schedule I, she listed total expenses of $15,389.69, including a mortgage payment of $7,250.69, which left monthly disposable income of $2,860.31. Amended Schedule J, at 1, Line 4, and 3, Lines 22c and 23c. ECF Doc. No. 9.

$9,347.00.  *Id.* at 2, Lines 13 and 14.  On her Third Amended Chapter 13 Calculation of Disposable Income, filed September 28, 2018 (the "Third Amended Disposable Income Calculation"), the Debtor listed current monthly income of $9,347.00, expenses of $3,085.00, which did not include mortgage and other real property related expenses, and monthly disposable income of $6,262.00.  Third Amended Disposable Income Calculation, at 7, Lines 39, 42, and 45.  ECF Doc. No. 85.

### E.      The Debtor's Amended Chapter 13 Plan

On October 30, 2017, the Debtor filed her original chapter 13 plan.  ECF Doc. No. 13. On September 28, 2018, she filed an amended chapter 13 plan (the "Amended Plan").  ECF Doc. No. 87.  The Amended Plan does not provide for post-petition mortgage payments to Wells Fargo, either through or outside the Amended Plan, or the payment of pre-petition mortgage arrearages.  Amended Plan, at 3, §§ 3.2(a) and (b).  The Amended Plan is also silent with respect to payments on account of the secured tax claim held by the IRS and HSBC's secured mortgage claim.  *Id.*

### F.      The Debtor's Attempts to Void the Secured Mortgage Claim Held by Wells Fargo Bank

After appearing in the case, Mr. Randolph focused his efforts on voiding Wells Fargo's secured claim, alleging that Wells Fargo fraudulently failed to present evidence that it was the holder of the note and mortgage in both the Foreclosure Action and the chapter 13 case. Debtor's Motion for Objection Claim 3-1, filed May 2, 2018 (the "Claims Objection Motion"), at 2, ¶¶ 5-9, 5, ¶ 17, and 6, ¶ 20.  ECF Doc. No. 39.  The Debtor admitted that she raised the issue in the Foreclosure Action, and that the Supreme Court overruled her argument, entered an order granting summary judgment in Wells Fargo's favor, and denied her motion to vacate the order granting summary judgment.  *Id.* at 2, ¶¶ 7-10.  After considering the Claims Objection Motion,

Wells Fargo's response, and the Debtor's reply, and conducting a hearing, the Court entered an Order denying the Claims Objection Motion on June 15, 2018. ECF Doc. Nos. 39, 51, 52, and 61.

The Debtor then filed a Complaint, on October 1, 2018 (the "Complaint"), against U.S. Bank, Credit Suisse, Wells Fargo, DLJ Mortgage Capital, Inc. ("DLJ"), and others to determine the validity, priority, and extent of the Wells Fargo's mortgage lien on the Residence (Adv. Pro. No. 18-01647 (CGM)) (the "Adversary Proceeding"). Adv. Pro. ECF Doc. No. 1. In the Complaint, the Debtor sought a judgment denying Wells Fargo's claim and determining that its lien is invalid, on the same grounds she raised in the Claims Objection Motion. Complaint, at 2-3. She also sought damages for legal fees and costs that the Debtor incurred in defending legal actions related to the note and mortgage. On November 26, 2018, Wells Fargo filed an answer to the Complaint. Adv. Pro. ECF Doc. No. 9.

The Debtor amended the Complaint three times. On December 17, 2018, the Debtor filed an amended Complaint (the "First Amended Complaint"), which clarified the identity of certain defendants and added a claim for exemplary damages against the parties that filed the allegedly fraudulent proof of claim in the Debtor's case, an action the Mr. Randolph considered to be "reprehensible." First Amended Complaint, at 1-4. Adv. Pro. ECF Doc. No. 11. On February 27, 2019, the Debtor filed a second amended Complaint (the "Second Amended Complaint"), adding Credit Suisse First Boston Mortgage Securities Corp. ("First Boston") as a defendant. Adv. Pro. ECF Doc. No. 19.

On March 13, 2019, First Boston and DLJ filed a Motion to Dismiss the Third Amended Complaint with prejudice as to the claims for relief against them (the "Dismissal Motion"). Adv. Pro. ECF Doc. No. 22. On April 23, 2019, the Court entered an Order Granting the Dismissal

Motion.  Adv. Pro. ECF Doc. No. 28.  On May 8, 2019, the Debtor filed a Motion to Reargue

and Reverse the Court's Order Granting the Motion to Dismiss under Federal Rule of Civil

Procedure 59 (the "Rule 59 Motion").  Adv. Pro. ECF Doc. No. 31.  On July 6, 2019, the Court

entered an Order Denying the Rule 59 Motion as to First Boston and Granting in Part and

Denying in Part, the dismissal as to DLJ, dismissing the Second Amended Complaint against

DLJ without prejudice, rather than with prejudice.  ECF Doc. No. 48.

After the Court granted leave on December 12, 2019, Wells Fargo filed a Motion for

Summary Judgment on January 21, 2020 (the "Summary Judgment Motion").  Adv. Pro. ECF

Doc. Nos. 80 and 86.  On March 12, 2020, the Debtor filed a motion to expunge an affidavit filed

in support of the Summary Judgment Motion, alleging that the Wells Fargo had failed to identify

the deponent and certain documents attached to the affidavit in discovery (the "Motion to

Expunge").  ECF Doc. Nos. 96 and 99.  After extensive briefing, the Court held a hearing on the

Summary Judgment Motion and Motion to Expunge on March 26, 2020.  On April 1, 2020, the

Court entered Orders granting the Summary Judgment Motion and dismissing the Second

Amended Complaint with Prejudice (the "Summary Judgment Order") and denying the Motion

to Expunge (the "Expungement Order").  Adv. Pro. ECF Doc. Nos. 107 and 108.  On April 3,

2020, the Clerk of Court closed the Adversary Proceeding.  Thereafter, the Debtor filed Motions

to Reopen the Adversary Proceeding to file motions for reconsideration of the Summary

Judgment Order and the Expungement Order, which the Court denied on May 19, 2020 (the

"Orders Denying Motions to Reopen").  ECF Doc. Nos., 109, 110, 123, and 124.

On June 1, 2020, the Debtor filed Notices of Appeal of the Orders Denying Motions to

Reopen.  Adv. Pro. ECF Doc. No. 125 and 126.  On June 2, 2020, the Debtor filed a Motion for

Stay Pending Appeal, which the Court denied in a Memorandum Decision and Order, filed on

June 18, 2020.  Adv. Pro. ECF Doc. Nos. 127, 142, and 143.  The appeals are pending before the United States District Court for the Southern District of New York.

      **G.**    **The Chapter 13 Trustee's Motion to Dismiss and Revelations Regarding Mr. Randolph's Fee Arrangement with the Debtor Raised in U.S. Bank's Joinder in the Motion to Dismiss.**

              **1.**    **The Chapter 13 Trustee's Motion to Dismiss**

On September 12, 2018, the chapter 13 trustee (the "Trustee") filed a motion to dismiss the Debtor's case for her failure to make plan payments, provide tax returns and pay advices, and because her scheduled debt exceeds the limit set forth in 11 U.S.C. § 109(e) (the "Dismissal Motion").  ECF Doc. No. 77.  On October 8, 2018, the Debtor filed an objection to the Dismissal Motion (the "Objection"), attempting to refute the allegations of failure to make plan payments and provide tax returns and pay advices.  Objection, at 1-2, ¶¶ 1-4.  ECF Doc. No. 94.  As to the debt limit, the debtor claimed that the mortgage debt held by Wells Fargo should not be considered because of the pending Adversary Proceeding, in which the Debtor was challenging the validity of the lien.  *Id.* at 2, ¶¶ A-C.  The Debtor also alleged that Wells Fargo was responsible for "potential fraud" and abuse of process and asked the Court to delay consideration of the Dismissal Motion until the conclusion of the Adversary Proceeding.  *Id.* at 3-4, ¶¶ D-E. On June 16, 2020, U.S. Bank, successor in interest to Wells Fargo, filed a joinder in the Dismissal Motion (the "Joinder") and a Declaration in Support of the Joinder (the "Declaration").  ECF Doc. Nos. 153 and 154.  The hearing on the Dismissal Motion is scheduled for October 29, 2020.  ECF Doc. No. 165.

## 2. Revelations Regarding Mr. Randolph's Fee Arrangement with the Debtor

Attached to the Declaration are two UCC-1 Financing Statements that Mr. Randolph recorded against the Residence and Investment Property on September 19, 2019 and May 13, 2020, respectively (collectively, the "Financing Statements"). Declaration, Exhibits B and C; and Exhibits 1 and 2 to the Declaration of Alicia M. Leonhard (the "Leonhard Declaration"). In connection with the Financing Statements, Mr. Randolph induced the Debtor to sign Notes, which are not part of the record of the case, and Security Agreements, dated June 13, 2019, to secure the payment of attorney's fees and costs for services rendered as Debtor's counsel in the chapter 13 case. *Id.*

The Security Agreements, which contain identical language, provide, in part:

> Creditor (Mr. Randolph) has agreed to loan Debtor up to the amount of five hundred thousand dollars ($500,000), in the form of unpaid legal fees and costs, to which the Debtor has agreed ("Loan"), with such Loan being secured by [the Residence or the Investment Property, and evidenced by the Note].

Security Agreements, at 1.

The Security Agreements further state:

> If Debtor fails to keep any of the promises made by Debtor in the Note or this Security Agreement, Debtor authorizes the Creditor to take possession of [the Investment Property or the Residence] and to sell [it], exclusive of personal property therein, to satisfy the Debtor's monetary obligation as set forth in the Note, together with agreed interest.

Security Agreements, § 2.B.

In a letter filed in response to the Joinder on June 17, 2020 ("June 17, 2020 Letter"), Mr. Randolph attempted to justify the Financing Statements and Security Agreements. June 17, 2020 Letter, Exhibit 3 to the Leonhard Declaration. He stated that he "used this process in the past, on a non-bankruptcy matter." *Id.* at 1. He estimated that his attorney's fees and costs could be as

much as $500,000.00, which is how he determined the amount of the loan.  *Id.*  He also stated

that he understood that the Debtor's case is "different" because general unsecured creditors were

to be paid in full under the Amended Plan and that he could only enforce the liens after

resolution of Wells Fargo's claim.  *Id.*  He admitted that he has not encountered this issue in a

bankruptcy case but that he did not consider seeking Court approval.  *Id.* at 2.  He stated that he

was considering having the Financing Statements released and seeking Court authority to refile

them.  *Id.*

On July 30, 2020, nearly two and half years after he appeared as Debtor's counsel in the

case, and undoubtedly in response to the disclosure of the Financing Statements and Security

Agreements, Mr. Randolph filed his Rule 2016(b) Disclosure, in which he disclosed that his

hourly rate is $550.00, prior to filing the Rule 2016(b) Disclosure, he received $117,745.00 in

compensation from the Debtor, and the balance due is $486,039.00.  Rule 2016(b) Disclosure,

Exhibit 4 to the Leonhard Declaration.  Mr. Randolph failed to disclose the existence of the

Notes, Security Agreements, and recorded Financing Statements, and whether he and the Debtor

entered an employment agreement for his bankruptcy-related services.  To date, he has not filed

an amended Rule 2016(b) Disclosure or an application for compensation expenses, and based on

the Rule 2016(b) Disclosure on file, he apparently accepted fee payments from the Debtor

without Court authority.

## III.  ARGUMENT

### A.  Mr. Randolph Violated his Duty of Disclosure of Compensation under 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b), which Warrants Denial of all Compensation, Disgorgement of Fees Received to Date, and Cancellation of Any Employment Agreement with the Debtor.

An attorney who represents a debtor in any bankruptcy case filed under title 11 has a duty

to disclose compensation received, or to be received, for services rendered in connection with the

case.  *In re Nunez*, 598 B.R. 696, 705 (Bankr. E.D.N.Y. 2019).  This duty of disclosure is set

forth in 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b).

Under § 329(a),

(a) Any attorney representing a debtor in a case under this title, or in connection
with such a case, whether or not such attorney applies for compensation under this
title, shall file with the court a statement of the compensation paid or agreed to be
paid, if such payment or agreement was made after one year before the date of the
filing of the petition, for services rendered or to be rendered in contemplation of
or in connection with the case by such attorney, and the source of the
compensation.

11 U.S.C. § 329(a).

Federal Rule of Bankruptcy Procedure 2016(b) provides as follows:

(b) *Disclosure of Compensation Paid or Promised to Attorney for Debtor.*
Every attorney for a debtor, whether or not the attorney applies for compensation,
shall file and transmit to the United States trustee within 14 days after the order
for relief, or at another time as the court may direct, the statement required by §
329 of the Code including whether the attorney has shared or agreed to share the
compensation with any other entity.  The statement shall include the particulars of
any such sharing or agreement to share by the attorney, but the details of any
agreement for the sharing of the compensation with a member or regular associate
of the attorney's law firm shall not be required. A supplemental statement shall be
filed and transmitted to the United States trustee within 14 days after any payment
or agreement not previously disclosed.

Fed. R. Bankr. P. 2016(b).

Section 329(a) and Rule 2016(b) apply to all counsel representing debtors in any chapter,

whether they must be retained by court order or not.  *In re Argento*, 282 B.R. 108, 113 (Bankr.

D. Mass. 2002).  "The language of section 329(a) is clear.  Counsel must disclose compensation

they have received or expect to receive for services rendered or to be rendered . . . in connection

with filing or conducting the bankruptcy."  *Id.*  Section 329(a) and Rule 2016(b) require "the

disclosure of **any** payment to the debtor's attorney, from one year prior to the filing of the

petition to the closing of the case."  *In re Whitcomb*, 479 B.R. 133, 139 (Bankr. M.D. Fla. 2012)

(emphasis in original). "An attorney is required to 'lay bare all of [his] dealings' concerning compensation agreements, payments, property transfers, etc. all made by, for, or on behalf of the debtor so that the court and parties are not forced to 'ferret out pertinent information.'" *Id.* at 140 (quoting *In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Me. 1991)).

"Disclosure of compensation pursuant to § 329(a) and Rule 2016(b) is mandatory, not permissive. The Bankruptcy Code requires fee disclosure to prevent overreaching by debtors' attorneys and give interested parties the ability to evaluate the reasonableness of fees paid." *In re Ortiz*, 496 B.R. 144, 148 (Bankr. S.D.N.Y. 2013) (citations and internal quotation marks omitted). *See also In re LaFerriere*, 286 B.R. 520, 526 (Bankr. D. Vt. 2002) (in the Second Circuit, courts use an inflexible standard to decide disclosure violations). "The disclosure obligation . . . is central to the integrity of the bankruptcy process." *Nunez*, 598 B.R. at 705 (citation omitted).

Under these provisions, every attorney representing a debtor in bankruptcy must file the statement required under Rule 2016(b) "within 14 days after the order for relief, or at another time as the court may direct." Fed. R. Bankr. P. 2016(b). "The obligation is a continuing one. Rule 2016(b) requires attorneys to submit supplemental statements 'within fourteen days after any payment or agreement not previously disclosed'" *Bethea v. Robert J. Adams & Assoc.*, 352 F.3d 1125, 1127 (7th Cir. 2003) (quoting Fed. R. Bankr. P. 2016(b)).

In chapter 13 cases, a debtor may retain counsel without seeking court authority under § 327(a) so long as counsel discloses its fee arrangements with the debtor under § 329(a) and Rule 2016(b) and seeks court approval of fees incurred post-petition. *In re Gorski,* 519 B.R. 67, 71 (Bankr. S.D.N.Y. 2014). Compliance with the fee disclosure obligations imposed upon a debtor's attorney is particularly necessary to the administration and disposition of Chapter 7 and

Chapter 13 cases because those cases involve a voluminous number of relatively small individual cases." *In re Chez*, 441 B.R. 724, 731 (Bankr. D. Conn. 2010). Mandatory fee disclosures protect both debtors from and creditors from overreaching lawyers who overcharge for their services. *Bethea*, 352 F.3d at 1127.

In the statement required under Rule 2016(b), debtor's counsel must fully disclose compensation paid, or to be paid, for services rendered in connection with case and the source of the compensation. *In re Chatkhan*, 496 B.R. 687, 695 (Bankr. E.D.N.Y. 2012). To fulfill the disclosure requirements, debtor's counsel must provide "direct and comprehensive" disclosure of all of its financial dealings with the debtor [and] "[c]oy, or incomplete disclosures . . . are not sufficient" *Id*. at 696 (citations omitted). The failure to make full disclosures is objectionable even if counsel shows that the failure was due to negligence or inadvertence. *Whitcomb*, 479 B.R. at 140.

The Bankruptcy Code does not specify a remedy for the failure to comply with the disclosure requirements of § 329(a) and Rule 2016(b). *In re Sledge*, 352 B.R. 742, 749 (Bankr. E.D.N.C. 2006). However, because full disclosure is central to the integrity of the bankruptcy process, "'[f]ailure to properly disclose a fee agreement subjects counsel to sanctions—even in the absence of other inappropriate conduct.'" *Gorski*, 519 B.R. at 73 (citing *In re Hall,* 2014 WL 4796929, at *3 (Bankr. N.D.N.Y. Sept. 26, 2014) (citing *In re Buckner,* 350 B.R. 874, 878 (Bankr. D. Idaho 2005)). The Court has discretion to impose an appropriate sanction for disclosure violations. *In re GSC Group, Inc*., 502 B.R. 673, 750 (Bankr. S.D.N.Y. 2016). "In cases involving an attorney's failure to disclose his fee arrangement under § 329 or Rule 2016(b) . . . courts have consistently denied all fees." *Gorski*, 519 B.R. at 74. *See also In re Gage,* 394 B.R. 184, 191 (Bankr. N.D. Ill. 2008) ("Many courts, perhaps the majority, punish defective

disclosure by denying all compensation."); *accord Sledge*, 352 B.R. at 749.

Here, Mr. Randolph's disclosure violations are particularly egregious, and the appropriate sanction is denial of all compensation. He first appeared in the case as Debtor's counsel on February 28, 2018, but he did not file his Rule 2016(b) Disclosure until July 30, 2020, nearly two and half years late. What is worse, Mr. Randolph filed the Rule 2016(b) Disclosure only after U.S. Bank filed the Financing Statements, recorded against the Properties, which revealed that Mr. Randolph induced the Debtor to sign Notes and Security Agreements that gave him the right to unconditionally take possession of the Properties and put them up for sale if she failed to pay his attorney's fees.

Mr. Randolph's belated Rule 2016(b) Disclosure was also incomplete and inconsistent with statements he made on the record of the case. Mr. Randolph did not reveal that he required the Debtor to execute Notes and Security Agreements to secure payment of his fees or that he recorded the Financing Statements on the Properties to perfect his security interests. He also failed to disclose whether he and the Debtor executed an employment agreement. In the Rule 2016(b) Statement, Mr. Randolph represented that he had received fees and costs of $117,745.00 from the Debtor. In the June 17, 2020 Letter, however, he stated that he was aware that he could not enforce the liens until general unsecured creditors and Wells Fargo were paid in full, which implies that he had not yet received any payments from the Debtor.

Mr. Randolph's flagrant breach of the duty of disclosure allowed him to shield an onerous fee arrangement from public scrutiny for nearly two and half years, which prejudiced the Debtor and impugned the integrity of the bankruptcy process. For this reason, the United States Trustee requests that the Court deny all compensation and direct Mr. Randolph to disgorge any fees he has received from the Debtor.

**B.** **Demanding Attorney Compensation up to $500,000.00 for Chapter 13-Related Services Is Excessive and Unconscionable and Warrants Cancellation of Any Employment Agreement and Denial and Disgorgement of Fees under 11 U.S.C. § 329(b) and Federal Rule of Bankruptcy Procedure 2017(b).**

The Court's review of potentially excessive attorney's fees in chapter 13 cases is

governed by 11 U.S.C. §§ 329(b) and 330(a)(4)(B) and Federal Rule of Bankruptcy Procedure

2017(b).

Under § 329(b),

(b) If [attorney] compensation exceeds the reasonable value of . . . services [rendered or to be rendered], the court may cancel any . . . agreement, or order the return of any . . . payment, to the extent excessive, to –
(1) the estate, if the property transferred—
(A) would have been property of the estate; or
(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
(2) to the entity that made such payment.

11 U.S.C. § 329(b).

Federal Rule of Bankruptcy Procedure 2017(b) provides:

(b) *Payment or Transfer to Attorney After Order for Relief.*  On motion by the debtor, the United States trustee, or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case.

Fed. R. Bankr. P. 2017(b).

Under § 329(b), the Court may deny compensation or cancel an attorney employment

agreement if the compensation exceeds the value of services rendered.  *In re D'Arata*, 587 B.R.

819, 824 (Bankr. S.D.N.Y. 2018).  Rule 2017(b), which implements § 329(b), gives the Court

authority to determine whether any fees paid after the order for relief, or a set forth in an attorney

employment agreement, are excessive, upon the motion of the debtor, the United States Trustee, or on the Court's own initiative. *In re Cervantes*, 617 B.R. 141, 145 (Bankr. E.D. Cal. 2020).

"In evaluating the value of legal services under Section 329(b), 'the question is whether the [sum] he was paid was excessive for what he accomplished.'" *D'Arata*, 587 B.R. at 824 (quoting *In re Nakhuda*, 544 B.R. 886, 903 (9th Cir. BAP 2016)). The Court's discretion to make this determine is wide "so long as the fees at issue are evaluated in light of the services actually performed." *Id*. (citing *Karsch v. LaBarge (In re Clark)*, 223 F.3d 859, 863-864 (8th Cir. 2000)). In evaluating whether fees are excessive, courts consider, among other things, "the necessity of the work performed, the novel or unusual difficulty presented by a particular legal issue, the attorney's legal experience, and failure or success in accomplishing the desired result on the debtor's behalf. *In re Ostas*, 158 B.R. 312, 323 (N.D.N.Y. 1993) (quoting *In re Bolton*, 43 B.R. 598, 600 (Bankr. E.D.N.Y. 1984)). "Significantly, the burden of proof is on the attorney to show that any compensation he or she has received is reasonable." *Id*. (quoting *Matter of Grant*, 14 B.R. 567, 569 (Bankr. S.D.N.Y. 1981)).

In chapter 13 cases, Court also consider the factors set forth in § 330(a)(4)(B), which provides,

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B). Courts also consider the time spent on the services, the reasonableness of the rates charged, whether the services were necessary at the time they were rendered, and other factors set forth in § 330(a)(3). *In re Mouzakis*, 479 B.R. 247, 248 (Bankr. E.D.N.Y. 2012).

Here, it is unclear how much Mr. Randolph has received in fees from the Debtor because of his deficient and contradictory Rule 2016(b) Disclosure. Likewise, it is not possible to determine the amount of fees he has incurred for services rendered because he has not filed an application seeking Court approval of compensation. In any case, it is an understatement to say that charging the Debtor up to $500,000.00 for services rendered during the case is patently unreasonable and excessive; and requiring the Debtor to pay fees of $117,745.00 prior to filing the Rule 2016(b) Disclosure without Court approval, if true, is equally outrageous.

In addition, it appears that most of Mr. Randolph's bankruptcy-related services were neither necessary nor beneficial to the estate. The Amended Plan he filed on the Debtor's behalf does not provide for post-petition payments to Wells Fargo, either through or outside the Amended Plan, or the payment of pre-petition mortgage arrearages. Amended Plan, at 3, §§ 3.2(a) and (b). He also failed to include payments on account of the secured tax claim of the IRS and HSBC's secured claim.[2] *Id.* These omissions have rendered the Plan unconfirmable on its face.

Mr. Randolph incurred most of his attorney time seeking to void Wells Fargo's mortgage claim, first through the Claims Objection Motion, and when that failed, through the Adversary Proceeding. In both proceedings, Mr. Randolph sought a judgment denying Wells Fargo's claim and determining that its lien is invalid based the allegation that it fraudulently failed to present evidence that it was the holder of the note and mortgage in the Foreclosure Action and the Debtor's case. Twice in this case, Mr. Randolph attempted to relitigate an issue decided in the Foreclosure Action. Because the Debtor did not prevail on the issue in the Foreclosure Action,

---

[2]Mr. Randolph's omission of HSBC's claim from Fourth Amended Schedule D and the Amended Plan because HSBC did not file a claim was erroneous. *See, e.g., In re Dumain*, 492 B.R. 140, 149 (Bankr. S.D.N.Y. 2013) (secured creditor does not have to file a proof of claim to receive distributions under a chapter 13 plan).

the claims asserted in the Claims Objection Motion and Adversary Proceeding are barred by the *Rooker-Feldman* Doctrine.[3] *See, e.g., Graham v. Select Portfolio Servicing, Inc*., 156 F. Supp.3d 491, 502 (S.D.N.Y. 2016) (mortgagor's claim that mortgagee lacked standing to obtain a foreclosure judgment was barred by the *Rooker-Feldman* Doctrine because the issue was decided in a foreclosure action concluded before the mortgagor sought relief in federal court). For this reason, neither of these proceedings was beneficial to the estate or necessary to the resolution of the case. Because Mr. Randolph's fee demand is excessive, denial or disgorgement of all fees and cancellation of any employment agreement with the Debtor are an appropriate sanction.

> **C.    The Court Should Cancel the Notes and Security Agreements under 11 U.S.C. § 329(b) and Direct Mr. Randolph to Release the UCC-1 Financing Statements Recorded Against the Properties.**

Attorneys may only seek authority to assert two types of liens in bankruptcy cases both of which relate to pre-petition fees. Under § 475 of New York Judiciary Law, a discharged attorney is entitled to a charging lien on damage awards or other monetary recoveries that resulted from the attorney's skill and effort. *Stair v. Calhoun*, 722 F. Supp.2d 258, 267 (E.D.N.Y. 2010) (citing *Butler, Fitzgerald & Potter v. Sequa Corp.,* 250 F.3d 171, 177 (2d Cir. 2001)). In bankruptcy, an attorney may assert a charging lien against the proceeds of a pre-petition judgment. *In re Joseph*, 330 B.R. 87, 91 (Bankr. D. Conn. 2005). The attorney may also assert a retaining lien on the client's files or funds in the attorney's possession. *In re Manshul Constr. Corp*., 225 B.R. 41, 49 (Bankr. S.D.N.Y. 1998).

Debtor's counsel may not assert a charging lien, a retaining lien, or any other lien against property of the estate for post-petition legal services. Bankruptcy Code §§ 330(a)(4)(B), 1326(a)(2), and 503(b) and Federal Rule of Bankruptcy Procedure 2016(a) comprise a

---

[3]The *Rooker-Feldman* Doctrine derives its name from two United States Supreme Court cases: *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

comprehensive statutory scheme governing attorney compensation in chapter 13 cases. *In re Rogers*, 519 B.R. 267, 271 (Bankr. E.D. Ark. 2014). In a confirmed chapter 13 case, debtor's counsel must file an application seeking court approval of post-petition compensation under § 330(a)(4)(B) and Rule 2016(a); if the case is dismissed, counsel must seek approval of compensation as an administrative claim under § 503(b). *Id*. at 272. "The statutory scheme for the payment of attorney's fees in chapter 13 cases is not supplanted by a supposed attorney's lien [to secure payment of post-petition fees]." *Id*. at 271.

Under § 329(b), the Court may cancel an attorney-client agreement if it provides for compensation that exceeds the reasonable value of the services provided. Requiring the Debtor to execute the Notes and Security Agreements and recording liens against the Properties to secure payment of post-petition legal fees was inappropriate, overreaching, excessive, and inconsistent with provisions of the Bankruptcy Code governing fee awards to debtor's counsel in chapter 13 cases.[4] The Court should, therefore, cancel the Notes and Security Agreements and direct Mr. Randolph to release the UCC-1 Financing Agreements recorded against the Properties.

## IV.    CONCLUSION

Based on the foregoing, the United States Trustee respectfully requests that the Court cancel any employment agreement between the Debtor and Mr. Randolph, deny all fees he incurred, order disgorgement of all fees received, cancel the Notes and Security Agreements, and

---

[4]By entering into this arrangement with the Debtor, Mr. Randolph may also have run afoul of New York Rule of Professional Conduct 1.8(i) which prohibits an attorney from acquiring a proprietary interest in the subject matter of litigation the lawyer is conducting for the client, except for acquiring a lien authorized by law under Rule 1.8(i)(1).//

direct Mr. Randolph to release the UCC-1 Financing Statements recorded against the Properties.

Dated:  Poughkeepsie, New York       WILLIAM K. HARRINGTON
         October 14, 2020.             UNITED STATES TRUSTEE, REGION 2

                                      By:  */s/ Alicia M. Leonhard*
                                           Alicia M. Leonhard
                                         Trial Attorney
                                         Leo O'Brien Federal Building
                                         11A Clinton Avenue, Room 620
                                         Albany, New York 12207
                                         Direct Telephone: 202.495.9929
                                         Albany Office Telephone: 518.434.4553
                                         Email: Alicia.M.Leonhard@usdoj.gov